570 So.2d 2 (1990)
Chris V. HANCHEY, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INS. CO., Defendant-Appellee.
No. 89-358.
Court of Appeal of Louisiana, Third Circuit.
September 20, 1990.
Rehearing Denied November 5, 1990.
Writ Denied January 11, 1991.
*3 Bradley, Wallace & O'Neal, David L. Wallace, DeRidder, Lester Leavoy, Alexandria, Perry Sanders, Lake Charles, for plaintiff-appellant.
Hall, Lestage & Landreneau, H.O. Lestage III, DeRidder, for defendant-appellee.
Before DOUCET, KNOLL and KING, JJ.
DOUCET, Judge.
This is an appeal from a trial court judgment dismissing the plaintiffs personal injury action. The trial court gave the following written reasons for judgment, which we adopt as our own.
"On April 26, 1985, plaintiff Chris V. Hanchey was involved in a one-vehicle accident in DeRidder, Louisiana, while driving a 1977 Pontiac Firebird automobile owned by his daughter Kristy V. Hanchey. Mr. Hanchey maintains that the accident was caused by a defect in the acceleration system of the vehicle. He was seriously injured in the accident and he filed this suit for damages against defendant State Farm Mutual Automobile Insurance Company as the alleged liability insurer of the Pontiac automobile and as the UM insurer of several other vehicles which he owned at that time.
"State Farm answered the suit denying that the accident was caused by a defect in the automobile and further denying any liability to Mr. Hanchey under the liability policy on the Pontiac or under the UM coverages afforded him under liability policies covering other vehicles.
"The case was fixed for trial on the merits for January 11, 1988, and the parties agreed to bifurcate the issues and first present to the Court the question of insurance coverage. Ultimately, on that issue, the Court ruled that Kristy had no liability coverage with State Farm to protect her on a claim arising out of her ownership of the Pontiac vehicle. However, as a result of the Pontiac being an uninsured vehicle as far as Kristy was concerned, the Court determined that Mr. Hanchey had UM coverage available to him under several policies issued to him by State Farm.
*4 "After the coverage questions were resolved the liability and damage issues were tried by the Court on December 13, 1988 and taken under advisement.
"From the evidence presented on January 11 and December 13, 1988, it appears that Mr. Hanchey purchased the Pontiac from a former owner in early October, 1979. On October 8, 1979, he applied for and obtained liability coverage on the vehicle from State Farm. Title to the Pontiac remained in Mr. Hanchey [sic] until October 4, 1984, when he transferred it to his daughter Kristy, who, although an adult, was still living in his home at that time. Despite the transfer of title to Kristy, the liability policy on the vehicle remained in Mr. Hanchey's name until the time of the accident. See the memorandum opinion of this Court, dated February 25, 1988.
"Prior to the accident Mr. Hanchey had owned and operated a service station in DeRidder for eighteen or nineteen years. Some minor automobile repair work was done at the station. On the morning of the accident the windshield wipers on the Pontiac were not working and either Kristy or her mother, Mrs. Mary Hanchey, called Mr. Hanchey at the station and asked him to get the vehicle at their home and fix the wipers. It was raining that morning and Mrs. Hanchey took Kristy to work at Profiles, a hair salon. As requested, Mr. Hanchey picked up the car and took it to his station where an employee, Earl Beasley, was instructed to fix the windshield wipers.
"According to Mr. Hanchey, while the automobile was at the station, windshield wipers and lights were checked and Beasley replaced some wiper fuses, which corrected the wiper problem. Mr. Beasley said that he did not check the lights on the vehicle that day, but simply put a fuse in the fuse box on the left side of the vehicle under the dash.
"Later in the day, after the windshield wiper problem had been corrected, Mr. Hanchey left the station in the Pontiac to take it to Kristy at her place of employment. He was being followed by Earl Beasley in another vehicle. Mr. Hanchey said that as he drove along East First Street in DeRidder he realized the emergency flashers on the Pontiac were flashing and he pulled over on the parking lot at Hayes Auto Supply to check those lights. Beasley also stopped at that point and both men got out of their vehicles to consider the problem. Mr. Hanchey said he let Beasley deal with the problem because he did not know what to do. According to Mr. Hanchey, Beasley checked inside the Pontiac and removed a fuse and the flashers stopped flashing. On the other hand, Beasley said the flashers were flashing because the switch was on and all he had to do to stop them from flashing was to cut the switch off. He added that he did not ask Mr. Hanchey why the flasher switch was on. In any event, after the flashers were deactivated Mr. Hanchey and Mr. Beasley returned to their vehicles to resume their journey.
"Mr. Hanchey said when he pulled back onto East First Street the vehicle speeded up and then went to "wide open" and he was unable to slow it down or stop it with the brakes. He said the accelerator hung and would not come loose even though he stomped on it. Mr. Hanchey said he had crossed over into the right lane of the east bound street, but since he could not stop the vehicle he swerved into the left lane to avoid vehicles ahead of him in the right lane. He lost control of the vehicle and it went off the highway into a deep ditch on the left or north side of East First Street.
"Mr. Hanchey said that while the accelerator was stuck things happened so fast he did not think about or consider applying the emergency brake on the vehicle or shifting into neutral or turning off the ignition switch.
"Although the Pontiac had been acquired by Mr. Hanchey in October, 1979, and had been driven by him, Kristy and other members of his family up to April 26, 1985, there had never been a problem with the accelerator on the vehicle. Neither Mr. Hanchey, Mrs. Hanchey, or Kristy had ever known of the accelerator sticking or the motor racing out of control. On the morning of the accident the vehicle had been driven by Mr. Hanchey to his service station *5 without any problem of that kind. The one and only time the accelerator acted up was while Mr. Hanchey was delivering the vehicle after work had been done on it by Earl Beasley at the service station and on the parking lot at Hayes Auto Supply.
"Under the facts and circumstances set forth above, it seems clear that on April 26, 1985, prior to the accident, Mr. Hanchey received Kristy's vehicle in deposit and the relationship of depositor (Kristy) and depositary (Mr. Hanchey) existed between them when the accident occurred. See Civil Code Articles 2926-2963 and Rubin, Bailment and Deposit in Louisiana, 35 La.L. Rev. 825. Under our jurisprudence where a depositary, such as Mr. Hanchey, makes a claim for damages caused by deposited property (such as the Pontiac Firebird), the depositor (such as Kristy) is not liable unless he knew or should have known of the dangerous nature of the deposited property and failed to warn the depositary. See Maryland Cas. Co. vs. Watson, 416 So.2d 194 (La.App. 1st Cir.1982); Coker vs. Continental Insurance Companies, 265 So.2d 327 (La.App. 3d Cir.1972); Estill vs. Hanover Insurance Company, 209 So.2d 542 (La.App. 2d Cir.1968); and Fredieu vs. City of Winnfield, 180 So.2d 48 (La.App. 2d Cir.1965).
"In this case it is firmly established that Kristy had no knowledge of any preexisting defect in the accelerator or acceleration system of her vehicle and she had no reason to know of or believe there was any such defect or other dangerous condition. There are no allegations in plaintiff's petition that Kristy was negligent in any manner and it is abundantly clear that she was not negligent.
"Under the applicable law of deposit and bailment as set forth above, and because Kristy did not know or have reason to believe that her vehicle had a dangerously defective condition at the time it was turned over to Mr. Hanchey, Kristy as the depositor of the vehicle, is not liable to Mr. Hanchey, the depositary, for injuries sustained by him while he was driving that vehicle.
"In this case there is no proof that the accident was caused by a defect in the accelerator or acceleration system of the vehicle. The accelerator and the other parts of the acceleration system were never checked or tested after the accident to determine what caused the problem which Mr. Hanchey experienced. Mr. Hanchey seems to contend that Kristy, as the owner of the vehicle, is liable to him regardless of what caused the problem simply because he was driving her vehicle at the time of the accident. Of course, this is not a case of absolute liability or liability without fault. Even if he is not barred from recovery by the rules applicable to deposit or bailment, Mr. Hanchey can recover only if he can prove that Kristy was negligent or is strictly liable under Article 2317 of the Civil Code. However, as already pointed out, the evidence does not establish that Kristy was negligent or that the automobile had a defect which caused the accident.
"From the evidence presented the Court cannot and does not find that it is more probable than not that the accident was caused by a defect in the accelerator or acceleration system. To the contrary, the Court finds that it is more probable than not that the hanging or sticking of the accelerator was caused by something done to or on or with the vehicle at Mr. Hanchey's service station and at the parking lot of Hayes Auto Supply. In making that finding the following facts and circumstances are relevant and persuasive: Mr. Hanchey and Kristy had owned the vehicle for approximately five and one-half years prior to the accident and during that time there were absolutely no problems with or complaints about the accelerator or acceleration system. The accelerator had never stuck or hung up or otherwise malfunctioned and the engine had never raced out of control. On the day of the accident Mr. Hanchey drove the automobile to his station and the accelerator continued to function properly. There was nothing to suggest there was a problem. The problem occurred only after the vehicle had been taken to the station and work had been done there and later on the road. In the absence of any other explanation, and none *6 was offered by plaintiff, these circumstances suggest that the accelerator malfunction resulted from the actions of Earl Beasley and/or Mr. Hanchey after the vehicle was in their possession rather than because of a defect.
"For the foregoing reasons, the Court finds that Mr. Hanchey has failed to prove his claim against State Farm by a preponderance of the evidence and, accordingly, his demands must be rejected at his costs."
After carefully reviewing the record in its entirety and the jurisprudence, we find that the findings of the trial court, as expressed in its written reasons, are reasonable. As a result, we may not reverse. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Rosell v. ESCO, 549 So.2d 840 (La.1989); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990). We find that the trial judge has correctly interpreted and applied the law in connection with this situation. As a result the judgment of the trial court is affirmed. Costs of this appeal are assessed to the plaintiff-appellant.
AFFIRMED.